Defendant Larry M. Pratt appeals from the trial court's denial of his motion to suppress results of breath alcohol tests administered by the City of Brook Park. For the reasons set forth below, we affirm.
On April 28, 1998, defendant was charged with speeding, driving while under the influence of drugs and/or alcohol, driving with a prohibited breath alcohol concentration (.145) and possession of drugs and drug paraphernalia. Defendant moved to suppress the results of his breath alcohol test and asserted that there was no probable cause to stop him and that the batch of alcohol certified solution used for calibrating the breath testing machine was unreliable.
The trial court held an evidentiary hearing upon the motion to suppress and agreed, at defendant's request, that defense expert Alfred E. Staubus, Ph.D. would be the court's first witness. Dr. Staubus testified that Batch 97220 of Alcohol Certified Solution ("calibration solution") which had been used to calibrate the Brook Park breath testing machine was unreliable. According to Dr. Staubus, the 1.204 mg/mL ethyl alcohol level as stated by the manufacturer and certified by the Department of Health could not be accepted because of the 1,800 bottles of solution derived from this batch, only three bottles were tested by the manufacturer to determine the percentage of ethyl alcohol. Dr. Staubus acknowledged that the Department of Health tested an additional four bottles four times each and determined that they were within the legally required confidence level of accuracy. He stated, however, that at least twenty bottles should be tested in order to determine the true alcohol level of the batch.
The prosecuting attorney indicated that the subsequent testing had determined that the batch of calibration solution was reliable and fit for use. The prosecuting attorney also presented evidence that defendant was stopped because the arresting officer's radar equipment determined that defendant was operating his vehicle at an excessive rate of speed.
The trial court subsequently denied the motion to suppress. It noted that the Department of Health conducted additional testing on the batch and found it to be within the required target value. The court further concluded that any error in the batch as originally certified actually served to benefit defendants. Defendant entered a plea of no contest to the charge of driving with a prohibited breath alcohol concentration and was found guilty. The remaining charges were dismissed at defendant's cost. Defendant now appeals and assigns five errors for our review.
Defendant's first assignment of error states:
 IT WAS REVERSIBLE ERROR FOR THE COURT TO REQUIRE THE APPELLANT TO BEAR BURDEN OF GOING FORWARD WITH EVIDENCE AND TO DENY THE MOTION TO SUPPRESS RESULTS OF BAC TEST RESULTS[;] THE COURT FAILED TO PRESENT EVIDENCE OF COMPLIANCE WITH THOSE REGULATIONS.
Within this assignment of error, defendant asserts that the trial court erred in failing to properly allocate the burdens of production and proof as set forth in Xenia v. Wallace (1988),37 Ohio St.3d 216.
In Xenia v. Wallace, supra, paragraphs one and two of the syllabus, the Supreme Court stated:
 "1. To suppress evidence obtained pursuant to a warrantless search or seizure, the defendant must (1) demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge.
 "2. Once a defendant has demonstrated a warrantless search or seizure and adequately clarified that the ground upon which he challenges its legality is lack of probable cause, the prosecutor bears the burden of proof, including the burden of going forward with the evidence, on the issue of whether probable cause existed for the search or seizure."
In this instance, the record demonstrates that defendant filed a motion to suppress in which he raised the grounds upon which he was challenging the BAC results (an allegedly invalid batch of calibration solution). Thus, the prosecuting attorney did bear the burden of proof and the burden of going forward with evidence. However, the record indicates the following:
 THE COURT: So we are taking this out of order. This is a defense witness?
[DEFENDANT'S TRIAL COUNSEL]: Yes, your honor.
 THE COURT: We are not here for a trial. We are set for a motion to suppress.
[DEFENDANT'S TRIAL COUNSEL]: Yes.
THE COURT: Normally the prosecutor would go first. Fine.
 [DEFENDANT'S TRIAL COUNSEL]: I want to thank you, your honor, and Mr. Jamison for the courtesy of taking my witness out of order.
Thereafter, defendant presented the testimony of Dr. Staubus who resides in Columbus. Accordingly, defendant clearly invited the circumstances of which he now complains and we therefore cannot accept his present claim that the trial court employed an erroneous procedure. State v. Woodruff (1983), 10 Ohio App.3d 326,327.
The first assignment of error is without merit.
Defendant's second assignment of error states:
 IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION FOR THE COURT TO DENY APPELLANT'S MOTION TO SUPPRESS THEREBY CONSTITUTING REVERSIBLE ERROR.
Within this assignment of error, defendant asserts that the trial court abused its discretion in denying his motion to suppress. The grounds for the motion were that there were no lawful grounds to stop him and that the breathalyzer results were tainted because the calibration solution was unreliable.
The prosecuting attorney presented evidence that defendant was stopped because the arresting officer's radar equipment determined that defendant was operating his vehicle at an excessive rate of speed. Further, as is set forth in greater detail below, the calibration solution was shown, through subsequent testing, to contain a legally acceptable alcohol level. The trial court did not abuse its discretion in denying his motion to suppress. In accordance with the foregoing, the second assignment of error is without merit.
Defendant's third, fourth, and fifth assignments of error are interrelated and state:
 THE SOLUTION USED TO CALIBRATE THE TESTING INSTRUMENT WAS INVALID AND NOT PROPERLY MAINTAINED NOR APPROVED IN ACCORDANCE WITH O.A.C. 3701-53-04 AND THE PROCEDURE USED TO APPROVE THE CALIBRATION SOLUTION IS SCIENTIFICALLY AND LEGALLY INVALID. THE PROCEDURE USED FAILED TO COMPLY WITH OHIO ADMINISTRATIVE CODE REQUIREMENTS. SEE O.A.C. CHAPTER 3701.
 THE COURT ERRED BY BASING ITS DECISION ON THE ADMISSIBILITY OF THE CERTIFICATE OF APPROVAL FOR BATCH 97220 AS EVIDENCE AT THE MOTION HEARING.
 THE COURT ABUSED ITS DISCRETION TO THE EXTENT IT SUA SPONTE
RAISED THE ADMISSIBILITY OF A DOCUMENT THAT WAS NEITHER PROFFERED NOR REQUIRED TO BE PROFFERED.
Within these assignments of error, defendant asserts that the batch solution for calibration of the breath machine was insufficiently tested and was therefore unreliable and produced an unreliable result.
Generally, the admissibility of breath test results depends on whether the state substantially complied with the regulations promulgated by the Ohio Department of Health (hereinafter "ODH"). See Ohio Adm. Code 3701-53-04; State v. Plummer (1986), 22 Ohio St.3d 292; and Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3.
Pursuant Ohio Adm. Code 3701-53-04(A)(4), breath testing machines must be calibrated "using an instrument check solution containing ethyl alcohol approved by the director of health." An instrument check is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution.
Calibration solution is prepared by adding ethyl alcohol to water. The mixture is then tested to determine the alcohol content of the entire batch. It must contain a known concentration of alcohol referred to as a "target value" which when used in the breath testing machine should produce a readout equal to the "target value" which when used in the breath testing machine should produce a readout of .100 grams of alcohol per 210 liter of breath, plus or minus .005. The Director of Health performs additional testing on the batch and if its tests produce a result within 5% of the manufacturer's stated target value, the Department of Health issues a certificate of accuracy for that batch.
Repeated challenges have been leveled in connection with calibration solution Batch 97220 because, according to Dr. Craig A. Sutheimer, Chief of the Alcohol Testing Program of the Department of Health, and Dr. Staubus, an inadequate number of bottles of the solution were tested in order to determine the true volume of ethyl alcohol of the entire batch. Nonetheless, the record indicates that when the possible unreliability of Batch 97220 was discovered, the Department of Health required that four additional bottles of the batch be tested four times each, and the subsequent testing revealed that the batch contained an acceptable target concentration and that the error in ascertaining the original volume in fact served to benefit defendants. Moreover, Batch 97220 has been determined to be reliable in numerous other cases. See State v. Melms (1999) ___ Ohio App.3d ___, Logan App. Nos. 8-98-19, 8-98-19, 8-98-20, unreported; State v. Dunn (Sept. 14, 1999), Ross App. No. 98CA2468, unreported; State v. Miller (Dec. 15, 1998), Marion App. No. 9-98-42, unreported; State v. Chandler (Sept. 1, 1999) Guernsey App. No. 98CA15; State v. Gronbach (July 1, 1999) Fairfield App. No. 98CA73; State v. Riders (June 24, 1999), Fairfield App. No. 98CA00051, unreported, State v. Walton (June 30, 1999) Fairfield App. No. No. 98 CA 00046; State v. Manzanares
(April 16, 1999), Wood App. No. WD-98-033, unreported; State v.Broerman (March 29, 1999), Wyandot App. No. 17-98-19, unreported;State v. Carney (Dec. 21, 1998) Marion App. No. 9-98-50, unreported.
The Melms Court stated:
 The legislature has clearly vested the director of ODH with the discretion to determine how best to approve instrument check solutions. R.C. 3701.143. Further, Dr. Staubus agreed that under proper conditions and quality control checks, the method used by ODH to approve Batch No. 97220 could produce accurate results. For instance, Staubus stated that if the manufacture's testing data were made available for review, then the method endorsed by ODH when Steifel tested the solution here could be reliable.
 Dr. Sutheimer testified that after Steifel had tested an additional ten bottles from Batch No. 97220 it made its "gas chromatographic data" available to him on December 16, 1997. That data and other information enabled Dr. Sutheimer to "reproduce the ability of their data * * * and actually utilize the same equations and generate those numbers myself." Therefore, because the testing data was made available to Dr. Sutheimer for review, even according to the testimony of Dr. Staubus, ODH could properly rely on the testing results.
 We held in [State v.] Miller (Dec. 15, 1998), Marion App. No. 9-98-42, unreported that the "breathalyzer test results gathered from a machine calibrated using a solution of ethyl alcohol from batch numbers 97010 or 97220, originally approved by the director of health pursuant to the exercise of his discretion, are reliable since it has been confirmed through subsequent scientific testing that these batches contain the amount of ethyl alcohol previously certified by the director of health * * * (Emphasis added.) Id. at 13.
 Here, we likewise determine that because subsequent scientific testing by ODH confirmed the accuracy of the solution of ethyl alcohol contained in Batch No. 97220, continued approval of that batch by the director of health was within his discretion. Accordingly, the solution in Batch No. 97220 used to calibrate the breathalyzer machine here was reliable. Because the trial court had no basis upon which to find that the approval of Batch No. 97220 was improper, the trial court's decision to suppress the test results here was contrary to law. Miller, supra. The state's assignment of error therefore is sustained.
In accordance with the foregoing, although defendant raised grounds upon which to challenge the BAC results, that challenge was not well-taken. The evidence of record demonstrated that the batch was in fact reliable, pursuant to subsequent testing.
Finally, we conclude that it was not error to permit introduction of the certificate of approval, since there was extensive testimony concerning the content of the certificate and the manner in which its values were obtained. Moreover, we note that defendant introduced these exhibits (Tr. 23, 30-31) and therefore cannot challenge their admission at this time. State v.Woodruff, supra. In accordance with the foregoing, assignments of error three, four and five are without merit.
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Berea Municipal Court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CORRIGAN, J., and BLACKMON, J., CONCUR.
 ____________________________________ ANN DYKE ADMINISTRATIVE JUDGE